UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

JIENNAH MCCOLLUM, ROICE JOLEEN MCCOLLUM,
AND CHEYENNE MCCOLLUM,

        PLAINTIFFS,

V.

ALEC BALDWIN,

        DEFENDANT.

CASE NO. 22-CV-8-NDF

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ALEXANDER R. BALDWIN III'S
MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Dated:  April 4, 2022

QUINN EMANUEL URQUHART & SULLIVAN, LLP

Luke Nikas (admitted *pro hac vice*)
51 Madison Avenue, 22nd Floor
New York, NY 10010
(212) 849-7000
lukenikas@quinnemanuel.com

LONG REIMER WINEGAR, LLP

Randall B. Reed, Wyo. Bar No. 5-2863
Aaron J. Lyttle, Wyo. Bar No. 7-4726
Kaylee A. Harmon, Wyo. Bar No. 7-6308
2120 Carey Avenue, Suite 300
Cheyenne, WY 82001
(307) 635-0710
rreed@lrw-law.com
alyttle@lrw-law.com
kharmon@lrw-law.com

*Attorneys for Defendant Alec Baldwin*

# TABLE OF CONTENTS

*Page*

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ......................................................................................... 1

BACKGROUND ............................................................................................................... 3

I.      BALDWIN IS A NEW YORKER WITH NO CONNECTION TO WYOMING ................................. 3

II.     LIKE MOST AMERICANS, BALDWIN USES SOCIAL MEDIA .................................................. 4

III.    BALDWIN CONTACTS ROICE ONLINE TO FACILITATE HIS DONATION TO A FUNDRAISER ....................................................................................................................... 4

IV.     ROICE POSTS ON INSTAGRAM A PICTURE OF THE JANUARY 6, 2021 EVENT AT THE CAPITOL TO CELEBRATE HER PARTICIPATION AND THE ONE-YEAR ANNIVERSARY ............. 5

V.      BALDWIN EXPRESSES HIS POLITICAL OPINION ................................................................... 5

VI.     MEMBERS OF THE PUBLIC EXPRESS THEIR OPINIONS, DISAGREEING WITH ROICE'S PARTICIPATION IN THE EVENTS OF JANUARY 6 .................................................................. 7

ARGUMENT ..................................................................................................................... 7

I.      THE COURT LACKS PERSONAL JURISDICTION OVER BALDWIN .......................................... 7

        A.     Legal Standard ....................................................................................................... 7

        B.     The Court Does Not Have General Personal Jurisdiction Over Baldwin ............... 8

        C.     The Court Does Not Have Specific Personal Jurisdiction Over Baldwin .............. 9

II.     PLAINTIFFS FAIL TO STATE ANY CLAIMS AS A MATTER OF LAW ..................................... 11

        A.     Plaintiffs Fail to State Claims for Defamation, Defamation Per Se, and Defamation by Implication ................................................................................... 12

               1.     Plaintiffs do not allege Baldwin made any statements about Jiennah or Cheyenne .................................................................................................... 12

               2.     Roice's private communications with Baldwin are not actionable .......... 13

               3.     Plaintiffs do not state claims for defamation per se because Baldwin did not impute to Plaintiffs a criminal offense .......................................... 13

               4.     Plaintiffs do not plead special damages .................................................... 16

               5.     Plaintiffs' defamation claims fail for several other independent reasons ...................................................................................................... 16

               6.     Defamation by implication is not recognized under Wyoming law .......... 20

        B.     Plaintiffs Fail to State Claims for False Light Invasion of Privacy and Intrusion Upon Seclusion ..................................................................................... 20

1.      False light invasion of privacy should not be recognized under Wyoming law and, regardless, Plaintiffs have not properly alleged it ............................................................................................ 20

2.      Plaintiffs do not state claims for intrusion upon seclusion ........................ 21

C.      Plaintiffs Fail to State Claims for Negligence and Gross Negligence ................. 22

D.      Plaintiffs Fail to State Claims for Intentional Infliction of Emotional Distress ................................................................................................. 23

E.      Plaintiffs' Complaint Should Be Dismissed With Prejudice ................................ 25

CONCLUSION ........................................................................................................................ 25

## TABLE OF AUTHORITIES

*Cases*                                                                                    *Page(s)*

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) .................................................................................11, 18, 23

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) ............................................................................................11

*Bextel v. Fork Rd. LLC,*
  474 P.3d 625 (Wyo. 2020) ...................................................................12, 20, 21

*Brereton v. Bountiful City Corp.,*
  434 F.3d 1213 (10th Cir. 2006) .........................................................................25

*C5 Med. Werks, LLC v. CeramTec GMBH,*
  937 F.3d 1319 (10th Cir. 2019) ...........................................................................9

*Calder v. Jones,*
  465 U.S. 783 (1984) .........................................................................................9, 10

*Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.,*
  680 F.3d 1194 (10th Cir. 2011) .........................................................................12

*Davis v. Big Horn Basin Newspapers, Inc.,*
  884 P.2d 979 (Wyo. 1994) .....................................................................14, 17, 18

*Dental Dynamics, LLC v. Jolly Dental Grp., LLC,*
  946 F.3d 1223 (10th Cir. 2020) ...........................................................................9

*Denver Pub. Co. v. Bueno,*
  54 P.3d 893 (Colo. 2002) ...................................................................................21

*Dworkin v. L.F.P., Inc.,*
  839 P.2d 903 (Wyo. 1992) ..................................................................................16

*Eighteen Seventy L.P. v. Jayson,*
  532 F. Supp. 3d 1125 (D. Wyo. 2020) .......................................................8, 9, 10, 11

*Energy Drilling, LLC v. Virtus Oil & Gas Corp.,*
  2016 WL 9450461 (D. Wyo. Apr. 15, 2016) ......................................................8

*Fredericks v. Jonsson,*
  609 F.3d 1096 (10th Cir. 2010) .........................................................................22

*Goodyear Dunlop Tires Operations, S.A. v. Brown,*
  564 U.S. 915 (2011) .............................................................................................8

*Hall v. Bellmon,*
    935 F.2d 1106 (10th Cir. 1991) .................................................................................12, 20, 24

*Hill v. Stubson,*
    420 P.3d 732 (Wyo. 2018) .............................................................13, 14, 15, 16, 20

*Hoblyn v. Johnson,*
    55 P.3d 1219 (Wyo. 2002) ...................................................................13, 16, 24, 25

*Howard v. Aspen Way Enters., Inc.,*
    406 P.3d 1271 (Wyo. 2017) ...........................................................................21, 22

*Lucero v. Holbrook,*
    288 P.3d 1228 (Wyo. 2012) ...........................................................................22, 23

*Martin v. Comm. for Honesty & Just. at Star Valley Ranch,*
    101 P.3d 123 (Wyo. 2004) .....................................................................................17

*Miles v. Lawrence,*
    2011 WL 13086566 (D. Wyo. Apr. 15, 2011) .......................................................12

*Milkovich v. Lorain J. Co.,*
    497 U.S. 1 (1990) ...................................................................................................16

*Old Republic Ins. Co. v. Cont'l Motors, Inc.,*
    877 F.3d 895 (10th Cir. 2017) .................................................................................9

*Red Chair, Inc. v. Matt Camron, Inc.,*
    2008 WL 11417014 (D. Wyo. May 9, 2008) ..................................................7, 8, 9

*Rice v. Collins Commc'n, Inc.,*
    236 P.3d 1009 (Wyo. 2010) ...................................................................................22

*Ridge at Red Hawk, L.L.C. v. Schneider,*
    493 F.3d 1174 (10th Cir. 2007) .............................................................................12

*Rockwood Select Asset Fund XI (6)-1, LLC v. Devine,*
    750 F.3d 1178 (10th Cir. 2014) ...............................................................................9

*Est. of Ronquillo v. City & Cnty. of Denver,*
    720 F. App'x 434 (10th Cir. 2017) .................................................................12, 20

*Ruhrgas AG v. Marathon Oil Co.,*
    526 U.S. 574 (1999) .................................................................................................7

*Samuel v. Oromia Media Network,*
    2021 WL 5054480 (D. Minn. Nov. 1, 2021) .........................................................23

*Sanchez v. United States*,
   506 F.2d 702 (10th Cir. 1974) ................................................................................22

*Shrader v. Biddinger*,
   633 F.3d 1235 (10th Cir. 2011) .........................................................................10, 11

*Snyder v. Phelps*,
   562 U.S. 443 (2011) ........................................................................................23, 24

*TeamLINX LLLP v. Casper Elec., Inc.*,
   2018 WL 9854671 (D. Wyo. Dec. 7, 2018) ...........................................................11

*Tschirgi v. Lander Wyo. State J.*,
   706 P.2d 1116 (Wyo. 1985) ...............................................................13, 15, 18, 19

*USI Ins. Servs. LLC v. Craig*,
   2018 WL 9868577 (D. Wyo. Aug. 9, 2018)......................................................14, 18

*Vance v. Wyomed Lab'y, Inc.*,
   375 P.3d 746 (Wyo. 2016) ......................................................................................23

*Walden v. Fiore*,
   571 U.S. 277 (2014) ........................................................................................1, 9, 11

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990)................................................................................20

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ...........................................................................................8, 11

*Worley v. Wyoming Bottling Co.*,
   1 P.3d 615 (Wyo. 2000) ..........................................................................................24

*Wyoming Corp. Servs. v. CNBC, LLC*,
   32 F. Supp. 3d 1177 (D. Wyo. 2014) ...............................................................19, 20

*XMission, L.C. v. Fluent LLC*,
   955 F.3d 833 (10th Cir. 2020) ..........................................................................10, 11

### Statutes

18 U.S.C. § 2383 ............................................................................................................13

### Other Authorities

Hawa Allan, Ideas, *What the History of the Word "Insurrection" Says About Jan. 6*,
   TIME (Jan. 7, 2022), https://time.com/6137604/history-insurrection-jan-6 .............15

Natalie Andrews, Lindsay Wise & Alexa Corse, *How Those Who Were There Look Back on Jan. 6 Capitol Riot*, WALL ST. J. (Jan. 6, 2022), https://www.wsj.com/articles/how-those-who-were-there-look-back-on-jan-6-capitol-riot-11641445262 ...................................... 5

*Capitol Insurrection: Tracking the Attack 1 Year Later*, ABC NEWS (Jan. 4, 2022), https://abcnews.go.com/video/embed?id=75158232 .................................................. 14

Dictionary.com, Slang Dictionary, https://www.dictionary.com/e/slang/throwback-thursday ................................................................................................................... 5

Li Cohen*, Jimmy Carter Pens Dire Warning at Insurrection Anniversary*, CBS NEWS (Jan. 6, 2022), https://www.cbsnews.com/news/jimmy-carter-insurrection-anniversary-dire-warning ............................................................................ 14

Nikolas Lanum, *Sister of Wyoming Marine Killed in Kabul Says Biden's Apology Looked 'Fake and Scripted'*, FOX NEWS (Aug. 31, 2021), https://www.foxnews.com/media/marine-rylee-mccollum-family-biden-scripted-kabul ................................. 17

*Merriam-Webster English Dictionary* ......................................................................... 2, 14

Opinion, Letters, *Was There an Insurrection on Jan. 6, 2021?*, WALL ST. J. (Jan. 10, 2022), https://www.wsj.com/articles/insurrection-capitol-riot-jan-january-6-trump-11641594590 ......................................................................................................... 15

Sean Sullivan, Dan Lamothe, Kareem Fahim & Haq Nawaz Khan, *Biden Meets with Families of Service Members Killed in Kabul as U.S. Races To Exit Afghanistan*, WASH POST. (Aug. 29, 2021), https://www.washingtonpost.com/politics/biden-meets-with-families-of-service-members-killed-in-kabul-as-us-races-to-exit-afghanistan/2021/08/29/c185ed78-08ca-11ec-aea1-42a8138f132a_story.html ........................... 17

Jonathan Weisman & Annie Karni, *McConnell Denounces R.N.C. Censure of Jan. 6 Panel Members*, N.Y. TIMES (Feb. 8, 2022), https://www.nytimes.com/2022/02/08/us/politics/republicans-censure-mcconnell.html ........................................................ 5

## Preliminary Statement

This case is not about whether Lance Corporal Rylee McCollum is an American hero.  He clearly is.  It is not about whether the McCollum family has sacrificed for our country.  They clearly have.  Nor is this case a vehicle for creating new rules at the intersection of social media and political discussion.  Instead, the case presents two settled legal issues.  In response to Plaintiff Roice McCollum's public Instagram post about her in-person participation in the January 6, 2021 protest at the U.S. Capitol Building, which falsely claimed that the 2020 presidential election was stolen, Alec Baldwin expressed the widely held political opinion that participating in that protest was an act of "insurrection"—the *same* word numerous Republicans, Democrats, media organizations, and even Senator McConnell have used to describe January 6.  Baldwin cannot be sued in Wyoming or be held liable for stating this political opinion.  A contrary ruling would violate the U.S. Constitution, violate U.S. Supreme Court and Tenth Circuit precedent, violate Wyoming common law, and result in an outcome Plaintiffs themselves claim to detest: a society in which someone can be legally punished for political speech.  This case should be dismissed.

*First*, the Court lacks personal jurisdiction.  The Court does not have general personal jurisdiction because Baldwin is domiciled in New York and has no connection to Wyoming.  The Court does not have specific personal jurisdiction because Plaintiffs do not allege that Baldwin focused his conduct on Wyoming, and none of the underlying causes of action is based upon activities that arise out of or relate to his contacts with the forum.  Instead, Plaintiffs allege that Baldwin was in New York when he made statements to his general group of Instagram followers, who are located around the world.  The only connection to Wyoming is that two of three Plaintiffs live in the state.  But the U.S. Supreme Court has made clear that "the plaintiff cannot be the only link between the defendant and the forum."  *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

*Second*, Plaintiffs have failed to state claims for defamation, defamation per se, or

defamation by implication.  Plaintiffs argue that Baldwin committed defamation per se because he accused them of committing serious crimes by stating that participants in the events of January 6 are "insurrectionists."  Baldwin is not a lawyer, and it is clear from the dictionary that the plain meaning of the word "insurrection" does not constitute a serious crime.[1]  This is just one of the Complaint's many legal flaws: Baldwin's statements constitute protected opinion on a matter of public concern, Plaintiffs are limited public figures and fail to plead actual malice, Jiennah and Cheyenne cannot assert any claims because Baldwin did not make statements about them, the claims based on Baldwin and Roice's private Instagram messages are defective because private communications between two parties cannot be defamatory, Plaintiffs have failed to plead special damages, and defamation by implication is not even a recognized tort under Wyoming law.

*Third*, Plaintiffs have not stated claims for false light invasion of privacy or intrusion upon seclusion.  The Wyoming Supreme Court has cast serious doubt upon whether Wyoming law even recognizes the tort of "false light invasion of privacy."  Regardless, Plaintiffs have not adequately alleged that Baldwin placed them in a false light that constitutes a major misrepresentation of their character, history, or activities.  Baldwin expressed his opinion about Roice's public participation in the events of January 6, 2021.  Plaintiffs' intrusion upon seclusion claim also fails because they do not allege that Baldwin intruded on their privacy.  On the contrary, they concede that Baldwin commented about a matter that Roice herself made public.

*Fourth*, Plaintiffs cannot state claims for negligence or gross negligence.  Plaintiffs do not adequately allege that Baldwin owed them any duty, and he cannot be held liable for negligence

---

[1]     *See*  Merriam-Webster  English  Dictionary,  https://www.merriam-webster.com/dictionary/insurrection (defining "insurrection" as "an act or instance of revolting against civil authority or an established government"); *id.* at https://www.merriam-webster.com/dictionary/revolt (defining "revolt" as "to renounce allegiance or subjection (as to a government)" or, alternatively, "to experience disgust or shock").

for stating his political opinion. These claims also fail because Plaintiffs do not plead proximate causation, and the bare recitation of the elements of gross negligence does not suffice to plead it.

*Finally*, Plaintiffs fail to state a claim for intentional infliction of emotional distress. They do not allege that Baldwin acted in an extreme and outrageous manner, as that standard has been articulated under Wyoming law, because reposting a photo Roice herself publicly posted and then expressing a political opinion about it cannot be the basis for an intentional infliction claim. If it were, the First Amendment protections that substantially limit the scope of permissible defamation claims would be irrelevant; plaintiffs could just assert intentional infliction claims or other torts instead, thereby circumventing the protections of our Constitution.

In sum, Baldwin expressed his opinion about a matter of public concern. Several others have expressed the same opinion as Baldwin about January 6. Some have expressed the opposite opinion. And there are opinion sections of major news outlets debating whether January 6 was an insurrection. There's even a committee of the U.S. Congress investigating this issue. Should we open the courthouse for claims against everyone who has publicly referred to January 6 as an "insurrection"—the Democratic Party, some members of the Republican Party, Senator McConnell, President Biden, nearly every major news organization, and more? Would this case exist if Baldwin weren't a well-known actor? Would Plaintiffs be asking for $25 million? No, clearly not. This is a political dispute masquerading as a lawsuit, motivated further by money. The public square—not this Court—is the proper place to debate Alec Baldwin's opinion.

<u>**BACKGROUND**</u>

I.     **BALDWIN IS A NEW YORKER WITH NO CONNECTION TO WYOMING**

Baldwin is a New York resident. (Compl. ¶¶ 6, 11-12.) Baldwin was born in New York, grew up in New York, and lives in New York now. (Declaration of Alec Baldwin ("Baldwin

Decl.") ¶ 2.)  Baldwin has never lived in Wyoming.  (*Id.* ¶ 3.)  He does not conduct regular business in Wyoming or own material assets in Wyoming.  (*Id.*)

## II.    LIKE MOST AMERICANS, BALDWIN USES SOCIAL MEDIA

Baldwin is a famous actor.  (Compl. ¶¶ 12, 38.)  Like most Americans, he maintains social media accounts.  (*Id.* ¶ 14.)  Baldwin firmly holds sincere political views.  (*Id.* ¶ 12.)  Baldwin frequently expresses his political opinions publicly, including on his social media accounts.  (*Id.* ¶¶ 12, 14.)  He uses those platforms to "regularly post[] videos and pictures featuring his political opinions[.]"  (*Id.* ¶ 14.)  He also uses those platforms to "encourage . . . his followers to support various causes and to be politically and socially active."  (*Id.*)  Baldwin himself "support[s] various causes," and he uses social media to identify and participate in those causes.  (*Id.*)  It is through social media that Baldwin became aware of Plaintiffs and their own cause.  (*Id.* ¶ 27, Ex. 1 at 4.)

## III.    BALDWIN CONTACTS ROICE ONLINE TO FACILITATE HIS DONATION TO A FUNDRAISER

On August 26, 2021, Plaintiffs' family member, LCPL McCollum, was killed in a bombing in Afghanistan.  (*Id.* ¶¶ 1, 15.)  At the time of his death, LCPL McCollum's wife, Jiennah, was pregnant with the couple's child.  (*Id.* ¶¶ 15, 20.)  Following her husband's death, an online fundraiser was started to raise money for Jiennah and their unborn baby.  (*Id.* ¶ 20.)

Baldwin does not personally know Plaintiffs, who are residents of California and Wyoming.  (Baldwin Decl. ¶ 4; Compl. ¶¶ 8-10.)  Baldwin became aware of LCPL McCollum's death from the news, and he found the fundraiser through Instagram.  (Compl. ¶ 27, Ex. 1 at 4.)  Baldwin wished to pay tribute to a fallen Marine and provide support for his widow and their child.  (*Id.* ¶ 27, Ex. 1 at 4.)  Baldwin privately contacted Roice, LCPL McCollum's sister, through her Instagram account to coordinate his $5,000 donation.  (*Id.* ¶ 20, Ex. 1 at 4.)

IV.   **Roice Posts on Instagram a Picture of the January 6, 2021 Event at the Capitol to Celebrate her Participation and the One-Year Anniversary**

In early January 2022, Roice posted a photograph to her public Instagram account.  (*Id.* ¶¶ 18, 20, Ex. 1 at 2.)  The image is instantly recognizable.  It shows a large crowd of people in front of the Washington Monument, many of them wearing "Make America Great Again" hats and waving flags bearing the name of the former President.  (*Id.*, Ex. 1 at 2.)  This was the January 6, 2021 protest of the certification of the 2020 presidential election, an event that led to a violent siege on the U.S. Capitol.  (*Id.* ¶ 18.)  Although January 6 may have begun as a "protest" (*id.* ¶¶ 18-19), those preceding events unmistakably set the stage for the fatal attack that followed.  Both liberals and conservatives have referred to the events of January 6 as a "riot" or "insurrection."[2]

Roice was present at the January 6 events in Washington, D.C. and had taken the picture there.  (*Id.*).  The caption to Roice's Instagram post read "Throwback,"[3] followed by several lighthearted and patriotic emojis.  (*Id.*, Ex. 1 at 2.)  She was celebrating, in Plaintiffs' words, "in anticipation of the January 6, 2022, one-year anniversary of her attendance" at this event (*id.* ¶ 18)—an event that attacked our democracy and led to destruction and death.

V.   **Baldwin Expresses his Political Opinion**

Baldwin saw Roice's Instagram post and was surprised to learn that Roice may have participated in the events of January 6.  (*Id.* ¶ 20, Ex. 1 at 2, 4.)  To confirm whether he had recalled

---

[2]   *See, e.g.*, Natalie Andrews, Lindsay Wise & Alexa Corse, *How Those Who Were There Look Back on Jan. 6 Capitol Riot*, Wall St. J. (Jan. 6, 2022), https://www.wsj.com/articles/how-those-who-were-there-look-back-on-jan-6-capitol-riot-11641445262; Jonathan Weisman & Annie Karni, *McConnell Denounces R.N.C. Censure of Jan. 6 Panel Members*, N.Y. Times (Feb. 8, 2022), https://www.nytimes.com/2022/02/08/us/politics/republicans-censure-mcconnell.html (noting that Senator Mitch McConnell referred to January 6 as a "violent insurrection").

[3]   "Throwback" refers to "a social-media trend when users . . . post photographs or recollections of the past[.]" Dictionary.com, Slang Dictionary, https://www.dictionary.com/e/slang/throwback-thursday.

Roice's identity correctly, Baldwin commented on Roice's Instagram post: "Are you the same woman that I sent the $ to for your sister's husband who was killed during the Afghanistan exit"? (*Id.* ¶ 20, Ex. 1 at 2.)  Roice confirmed that she was Jiennah's sister-in-law.  (*Id.* ¶ 21.)

Baldwin then exchanged private Instagram messages with Roice, in which he privately accused her of being a "January 6th rioter."  (*Id.* ¶¶ 21-22, Ex. 1 at 3.)  In response, Roice did not deny being a "January 6th rioter."  Exactly the opposite: she expressly confirmed her participation, stating "Protesting is perfectly legal in this country and I've already had my sit down with the fbi. Thanks, have a nice day!"  (*Id.* ¶ 22, Ex. 1 at 3.)  Baldwin responded that Roice's "brother fought for this country bravely and honestly," but the January 6 riot that Roice did not deny participating in "resulted in the unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election."  (*Id.*, Ex. 1 at 3.)

At that point, Baldwin was struck by the irony that his tribute to a fallen Marine, a patriot, was coordinated by an individual who participated in an event that—in Baldwin's and many other people's opinion—was an assault on the core of American democracy.  (*Id.* ¶ 27, Ex. 1 at 5-6, 9.) Consistent with his longstanding use of social media to address political matters (*id.* ¶¶ 12, 14), Baldwin expressed his opinion.  (*Id.* ¶ 27, Ex. 1 at 4.)  Baldwin reposted Roice's publicly posted January 6 photograph on his own Instagram feed.  (*Id.* ¶ 28, Ex. 1 at 4.)  He added a caption accompanying the post.  (*Id.* ¶ 27, Ex. 1 at 4.)  His caption accurately stated the circumstances of his acquaintance with Roice, as Plaintiffs themselves recount those facts.  (*Id.* ¶ 27, Ex. 1 at 4; *see id.* ¶ 20.)  The caption did not reference by name Roice, Jiennah, Cheyenne, or any other member of the McCollum family.  (*Id.* ¶ 27, Ex. 1 at 4.)  Baldwin's caption ended with a comment about the irony he observed: "Then I find this.  Truth is stranger than fiction."  (*Id.* ¶ 27, Ex. 1 at 4.) "This" referred to the photograph, which Roice herself had thrust into the public eye on her own

Instagram account.  (*Id.* ¶ 18, Ex. 1 at 2, 4.)  As Plaintiffs admit, Roice was proud to be associated with the photograph: she promoted it publicly "in anticipation of the . . . one-year anniversary" of January 6, with a "Throwback" caption and celebratory emojis.  (*Id.* ¶ 18, Ex. 1 at 2.)

## VI.   MEMBERS OF THE PUBLIC EXPRESS THEIR OPINIONS, DISAGREEING WITH ROICE'S PARTICIPATION IN THE EVENTS OF JANUARY 6

Plaintiffs allege that they began to receive unwanted, hateful Instagram messages following Baldwin's repost of Roice's photograph—the photograph that *she* publicly posted and was *celebrating* publicly.  (*Id.* ¶¶ 30, 32, 35-36, 40.)  These messages were sent by third parties.  (*Id.* ¶ 30, Ex. 1 at 7-22.)  Baldwin publicly denounced the hateful messages and reiterated that his disagreement with Roice's conduct did not affect the support he had extended to her family.  (*See id.* ¶ 33, Ex. 1 at 5-6, 8-9.)  For example, Baldwin commented on the offensive messages, "I find that abhorrent[.]  My feelings were expressed by my gesture on behalf of your brother."  (*Id.*, Ex. 1 at 6.)  And in a few follow-up posts on his general Instagram account, Baldwin clarified the opinion he had expressed: the irony of the situation and that Roice was an "insurrectionist" for participating in the January 6 events.  (*E.g.*, *id.* ¶ 33, Ex. 1 at 5, 8-9.)  Baldwin did not publicly state that Roice was a "rioter" or say anything else the Complaint alleges to be defamatory.

## ARGUMENT

## I.   THE COURT LACKS PERSONAL JURISDICTION OVER BALDWIN

### A.   Legal Standard

"Personal jurisdiction . . . is an essential element of the jurisdiction of a district court, without which the court is powerless to proceed to an adjudication."  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999).  "In a diversity action," as here, "a federal district court may not exercise personal jurisdiction unless it complies with (1) the forum state's long-arm statute, and (2) the Due Process Clause of the Fourteenth Amendment."  *Red Chair, Inc. v. Matt Camron, Inc.*,

2008 WL 11417014, at *2 (D. Wyo. May 9, 2008).  "Because Wyoming's long-arm statute confers the maximum jurisdiction permissible consistent with due process, the personal jurisdiction inquiry can be collapsed into a single analysis under the Due Process Clause." *Eighteen Seventy L.P. v. Jayson*, 532 F. Supp. 3d 1125, 1131 (D. Wyo. 2020).

"A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant only so long as there exist 'minimum contacts' between the defendant and the forum State." *Energy Drilling, LLC v. Virtus Oil & Gas Corp.*, 2016 WL 9450461, at *2 (D. Wyo. Apr. 15, 2016) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)).  The presence of minimum contacts ensures that "maintenance of the suit does not offend traditional notions of fair play and substantial justice" and that the defendant "could reasonably anticipate" being haled into court in the forum.  *Eighteen Seventy*, 532 F. Supp. 3d at 1132 (quoting *World-Wide Volkswagen*, 444 U.S. at 292).  "The plaintiff bears the burden of establishing personal jurisdiction, whether general or specific." *Id.*  Plaintiffs have established neither.

**B.     The Court Does Not Have General Personal Jurisdiction Over Baldwin**

The Court cannot exercise general personal jurisdiction over Baldwin.  General jurisdiction is proper only where a defendant's contacts with the forum state are "so continuous and systematic as to render it essentially at home" there.  *Energy Drilling*, 2016 WL 9450461, at *2.  When the defendant is an individual, "the paradigm forum for the exercise of general jurisdiction is the individual's domicile[.]"  *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011).  Baldwin has never lived or spent significant time in Wyoming.  (Baldwin Decl. ¶ 3.)  Baldwin has never done regular business in Wyoming.  (*Id.*)  Baldwin does not own real property or material assets in Wyoming.  (*Id.*)  Baldwin does not have continuous and systematic contacts with Wyoming.  (*See id.*)  Thus, the Court cannot exercise general jurisdiction over Baldwin.

### C.      The Court Does Not Have Specific Personal Jurisdiction Over Baldwin

The Court also lacks specific personal jurisdiction because Baldwin did not purposefully direct any alleged conduct toward Wyoming.  "A court may exercise specific personal jurisdiction over a defendant if[] (1) the defendant has 'purposefully directed' its activities toward the forum jurisdiction, and (2) when the underlying cause of action is based upon activities that 'arise out of' or relate to the defendant's contacts with the forum." *Red Chair*, 2008 WL 11417014, at *2. "Purposeful direction may . . . be established 'when an out-of-state defendant's intentional conduct targets and has substantial harmful effects in the forum state.'" *Eighteen Seventy*, 532 F. Supp. 3d at 1137 (quoting *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 907 (10th Cir. 2017)). Consistent with the Supreme Court's holdings in *Calder v. Jones*, 465 U.S. 783 (1984), and *Walden v. Fiore*, 571 U.S. 277 (2014), the Tenth Circuit has distilled these principles into a three-part test: whether the defendant took "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020).

Plaintiffs have failed to allege that Baldwin "expressly aimed" his conduct at Wyoming. This failure is dispositive because specific personal jurisdiction "requires showing more than simply harm suffered by a plaintiff who resides in the forum state." *Old Republic*, 877 F.3d at 917 (citing *Walden*, 571 U.S. at 290); *see also Dental Dynamics*, 946 F.3d at 1232 (isolated "communications into the forum-state are insufficient to establish [the defendant] 'expressly aimed' his allegedly tortious" conduct at the state); *C5 Med. Werks, LLC v. CeramTec GMBH*, 937 F.3d 1319, 1324 (10th Cir. 2019) ("merely interacting with a plaintiff" in forum not sufficient to establish personal jurisdiction); *Rockwood Select Asset Fund XI (6)-1, LLC v. Devine*, 750 F.3d 1178, 1180 (10th Cir. 2014) (defendant's letter containing alleged falsehoods sent to plaintiff in forum insufficient to establish specific personal jurisdiction); *Eighteen Seventy*, 532 F. Supp. 3d

9

at 1138 ("[A] defendant's knowledge of the plaintiff's connection to the forum state, standing alone, cannot confer personal jurisdiction[.]").   Instead, a court "focuses on a defendant's intentions and seeks to determine whether the forum state was the 'focal point' of the defendant's [allegedly] tortious actions." *Eighteen Seventy*, 532 F. Supp. 3d at 1138.

The Tenth Circuit has stated that these principles of personal jurisdiction apply with equal force online and that, with respect to "Internet activities such as mass emailing, website hosting, and Internet posting," the inquiry "examine[s] whether the defendant 'deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.'" *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 844-45 (10th Cir. 2020) (quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011)).   Applying this test, the Tenth Circuit has rejected personal jurisdiction over an out-of-state defendant who sent an allegedly defamatory mass email concerning an Oklahoma resident because plaintiff offered only proof that "[defendant] sent the email in bulk fashion to multiple recipients . . . not . . . that any of the recipients resided in Oklahoma, much less that [defendant] knew they resided there when he sent the email." *Shrader*, 633 F.3d at 1248.   The Tenth Circuit found this to be "a fatal deficiency in [plaintiff's] case for specific personal jurisdiction."   *Id.*

So, too, here.   While Plaintiffs allege that Baldwin's purportedly tortious communications were broadcast "to his 2.4 million Instagram followers," that is precisely the point: his statements were about a matter of general public concern, the January 6 events, not a matter of special relevance to Wyoming.   (Compl. ¶¶ 2, 27, 38.)   To compound their jurisdictional problem, Plaintiffs further allege that Baldwin was in New York during the alleged events (*id.* ¶¶ 43, 74, 105) and that his communications were about conduct that occurred in Washington, D.C.   *Compare Calder*, 465 U.S. at 789-90 (finding jurisdiction proper because communications were widely

10

circulated in the forum, and the forum was "the focal point both of the story and of the harm" to plaintiff), *with Shrader*, 633 F.3d at 1245 (no jurisdiction where forum "was not the focal point of [Internet post], either in terms of its audience or its content"). Significantly, even if Baldwin did know that people in Wyoming would view his posts, that is legally irrelevant because "[g]eneral knowledge that a message will have a broad circulation does not suffice." *XMission*, 955 F.3d at 846. If a court "were to conclude . . . that a person's act of placing information on the Internet subjects that person to personal jurisdiction in each State in which the information is accessed, then the defense of personal jurisdiction . . . would no longer exist." *Shrader*, 633 F.3d at 1240.

The only contact Plaintiffs plausibly allege to connect Baldwin to Wyoming is that two of three Plaintiffs live in the state. "But the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. Because of Baldwin's lack of minimum contacts with, or purposeful direction of his activities toward, Wyoming, asserting jurisdiction over Baldwin in Wyoming would not comport with "traditional notions of fair play and substantial justice." *Eighteen Seventy*, 532 F. Supp. 3d at 1132 (quoting *World-Wide Volkswagen*, 444 U.S. at 292). Plaintiffs' Complaint should therefore be dismissed for lack of personal jurisdiction.

## II.   PLAINTIFFS FAIL TO STATE ANY CLAIMS AS A MATTER OF LAW

"To survive a motion to dismiss, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *TeamLINX LLLP v. Casper Elec., Inc.*, 2018 WL 9854671, at *1 (D. Wyo. Dec. 7, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "that simply provide[s] 'a formulaic recitation of the elements of a cause of action' or 'naked assertions devoid of further factual enhancement,' will not survive a motion to dismiss." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Because it is a plaintiff's burden to "nudge[] their claims across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of

the pleaded claims is insufficient; the complaint must give the court reason to believe that this

plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red*

*Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted).

> ### A. Plaintiffs Fail to State Claims for Defamation, Defamation Per Se, and Defamation by Implication
>
> > #### 1. Plaintiffs do not allege Baldwin made any statements about Jiennah or Cheyenne

The Complaint fails to state claims for defamation with respect to Jiennah and Cheyenne,

because Baldwin is not alleged to have made statements about them. *Bextel v. Fork Rd. LLC*, 474

P.3d 625, 630 (Wyo. 2020) ("[Plaintiff] cannot assert a defamation per se claim because the verbal

statements and the letter nowhere reference him.").

Plaintiffs allege that Baldwin referred to Jiennah by stating, "I gratefully supported the

gofundme campaign while simultaneously not knowing the woman I approached is an

insurrectionist." (Compl. ¶¶ 33-34.) But this allegation directly contradicts the Instagram feed

that Plaintiffs attached to their Complaint (*id.*, Ex. 1 at 9), which is incorporated by reference and

must be considered here. *See Est. of Ronquillo v. City & Cnty. of Denver*, 720 F. App'x 434, 437

(10th Cir. 2017) (allegations in complaint need not be accepted as true "when directly contradicted

by the attached exhibits"); *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys.,*

*Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011). Plaintiffs' *own description* of Roice's interactions

with Baldwin shows that *Roice* is "the woman [Baldwin] approached" to facilitate his donation—

it was Roice's Instagram post that Baldwin had viewed, it was Roice who Baldwin approached, it

was Roice who Baldwin communicated with privately, and his Instagram posts unambiguously

related to her. (Compl. ¶¶ 20-22, 27.) *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

("conclusory allegations without supporting factual averments are insufficient to state a claim");

*Miles v. Lawrence*, 2011 WL 13086566, at *26 n.12 (D. Wyo. Apr. 15, 2011) (on motion to

dismiss, the court may resolve a fact dispute against plaintiffs if "their claim is patently frivolous"). And Plaintiffs do not allege that Baldwin made statements about Cheyenne.

### 2. Roice's private communications with Baldwin are not actionable

Although the Complaint repeatedly refers to Baldwin's private Instagram messages with Roice (Compl. ¶¶ 21-22, 26, 28, Ex. 1 at 3), those messages are not actionable because only published material can be defamatory. *See Tschirgi v. Lander Wyo. State J.*, 706 P.2d 1116, 1119 (Wyo. 1985). All claims based on those private messages must be dismissed.

### 3. Plaintiffs do not state claims for defamation per se because Baldwin did not impute to Plaintiffs a criminal offense

"Wyoming recognizes two general classes of defamation: defamation with special damages and defamation per se." *Hill v. Stubson*, 420 P.3d 732, 741 (Wyo. 2018). Defamation per se is "a statement which is defamatory on its face and, therefore, actionable without proof of special damages." *Hoblyn v. Johnson*, 55 P.3d 1219, 1233 (Wyo. 2002). Under Wyoming law, "[t]he only statements classified as defamatory per se . . . are those which impute (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with business, trade, profession, or office; or (4) serious sexual misconduct." *Id.* None applies here.

Plaintiffs allege that Baldwin imputed to Plaintiffs the commission of a crime. (Compl. ¶¶ 55, 86, 116.) Specifically, Plaintiffs claim Baldwin's use of the words "insurrectionist" and "rioter" suffice to impute to them criminal offenses under 18 U.S. Code § 2383. (*Id.*; *see id.* ¶¶ 32-33.) But "[t]o be actionable per se, a statement imputing a criminal offense must reference a crime that is (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." *Hill*, 420 P.3d at 743.

*First*, Baldwin made no such reference. While Plaintiffs argue Baldwin accused them of violating 18 U.S.C. § 2383 for "participati[ng] in a rebellion and uprising against the United States

Government" (Compl. ¶¶ 55, 86, 116), a court's "consideration looks to the words [the defendant] used, not the characterization [the plaintiff] gives the words." *Hill*, 420 P.3d at 743; *USI Ins. Servs. LLC v. Craig*, 2018 WL 9868577, at *7 (D. Wyo. Aug. 9, 2018) ("[T]he Court reviews the actual words of the statement."); *see Davis v. Big Horn Basin Newspapers, Inc.*, 884 P.2d 979, 984 (Wyo. 1994) (rejecting plaintiff's subjective interpretation of allegedly defamatory words).  Baldwin's actual statement, the use of the word "insurrection," did not accuse Plaintiffs of committing a crime.  *See, e.g.*, *Hill*, 420 P.3d at 744 (defendant's "statements simply lacked the specificity required to be actionable as defamation per se").  Rather, it is apparent that Baldwin, who is not a lawyer or an expert on the U.S. Code, generally used the word "insurrection" to convey its plain dictionary meaning: "an act or instance of revolting against civil authority or an established government."   Merriam-Webster   English   Dictionary,   https://www.merriam-webster.com/dictionary/insurrection.  The plain meaning of Baldwin's statement—his opinion that the January 6 events, which attacked a legitimate presidential election, constituted an act of revolt against our civil government—does not accuse Plaintiffs of committing a crime.  *Id.* at https://www.merriam-webster.com/dictionary/revolt (defining "revolt" as "to renounce allegiance or subjection (as to a government)" or, alternatively, "to experience disgust or shock").  Instead, it describes an opinion of the January 6 events that has been expressed, in identical terms, by virtually every major news organization in America and by numerous public officials, including the current President and the Republican Senate Majority Leader at the time.[4]

---

[4] Even a cursory internet search shows that numerous news organizations have referred to January 6 as an insurrection, including ABC, CBS, CNN, the *Los Angeles Times*, NBC, the *New York Times*, PBS, *USA Today*, and the *Washington Post*.  *See, e.g.*, *Capitol Insurrection: Tracking the Attack 1 Year Later*, ABC NEWS (Jan. 4, 2022), https://abcnews.go.com/video/embed?id=75158232;  Li Cohen, *Jimmy Carter Pens Dire Warning at Insurrection Anniversary*, CBS NEWS (Jan. 6, 2022), https://www.cbsnews.com/news/jimmy-carter-insurrection-anniversary-dire-warning.

There are also opinion sections of major news organizations, including *Time* and the *Wall Street Journal*, debating whether January 6 was an insurrection. *See, e.g.*, Hawa Allan, Ideas, *What the History of the Word "Insurrection" Says About Jan. 6*, TIME (Jan. 7, 2022), https://time.com/6137604/history-insurrection-jan-6; Opinion, Letters, *Was There an Insurrection on Jan. 6, 2021?*, WALL ST. J. (Jan. 10, 2022), https://www.wsj.com/articles/insurrection-capitol-riot-jan-january-6-trump-11641594590. Baldwin participated in that ongoing political debate of extreme public importance when he used the word "insurrectionist" to describe Roice's participation in the January 6 events. That was not defamation per se. He did not accuse her of violating the U.S. Code. He simply expressed his disagreement with the opinion that Roice herself had announced to the world—that her participation in the January 6 events was patriotic, deserving of celebration and a showcase of American flags. The real irony here is that Roice is suing Baldwin for expressing his widely supported opinion about January 6, when Roice had written to him moments before that her participation at January 6—an event that promoted the false assertion that the 2020 election was stolen—constitutes the "freedom of protest."

*Second*, even a statement that someone engaged in "illegal" conduct does rise to the level of defamation per se because, in the words of the Wyoming Supreme Court, "[a]ccusing a person of illegal conduct is not the same as accusing her of criminal conduct." *Hill*, 420 P.3d at 743-44. Thus, even if Baldwin had referred to or implied that Roice's conduct was *illegal* (and he did not), such a statement would not constitute defamation per se.

*Third*, Baldwin never publicly stated that Roice was a "rioter." As the exhibit incorporated into the Complaint makes clear, Baldwin made that statement to Roice in a private message. (Compl. ¶¶ 21-22, Ex. 1 at 3.) That private statement is not actionable. *Tschirgi*, 706 P.2d at 1119.

Plaintiffs' defamation per se claim must be dismissed.

### 4.    Plaintiffs do not plead special damages

The second type of defamation recognized under Wyoming law is defamation with special damages. *Hill*, 420 P.3d at 741. "Defamation with special damages is actionable only if the plaintiff suffers special harm, meaning the 'loss of something having economic or pecuniary value.'" *Id.* (quoting *Hoblyn*, 55 P.3d at 1233). Plaintiffs do not plead special damages because they do not allege that they suffered any economic or pecuniary losses. Instead, Plaintiffs' claimed injuries are physical and emotional. (*See* Compl. ¶¶ 40, 135 (alleging Plaintiffs suffered, for example, "emotional distress, anxiety, and fear").) Plaintiffs appear to concede they do not plead special damages because they allege they have pleaded defamation per se and thus their claims are "actionable without proof of special damages." (*Id.* ¶¶ 55, 86, 116.)

### 5.    Plaintiffs' defamation claims fail for several other independent reasons

Plaintiffs' claims suffer from several other independent flaws that require dismissal.

*First*, Baldwin's statements are not actionable because they constitute his protected opinion on a matter of public concern. *See Dworkin v. L.F.P., Inc.*, 839 P.2d 903, 914 (Wyo. 1992) (noting that a rule of the Supreme Court's "existing protective constitutional doctrine is that 'a statement of opinion relating to matters of public concern which does not contain a provably false connotation will receive full constitutional protection'") (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 20 (1990)). The events of January 6 are unquestionably a matter of public concern for the reasons explained above, and Plaintiffs concede Baldwin's Instagram account "regularly" features "his political opinions [and] musings" and that Baldwin is "very outspoken," "politically active and . . . opinionated." (Compl. ¶¶ 12, 14, 31.) Plaintiffs even allege Baldwin "*believes* that every person present at the Capitol demonstration on January 6, 2021, is an unrepentant rioter[.]" (*Id.* ¶ 118 (emphasis added).) Baldwin's beliefs are not actionable as defamation.

*Second*, Plaintiffs are limited public figures with respect to the issues addressed in

Baldwin's opinion, but they fail to plead actual malice.  A limited public figure under Wyoming law is an individual who has "voluntarily injected themselves or been drawn into a particular public controversy[,] thereby becoming a public figure for a limited range of issues for which they are prominent."  *Martin v. Comm. for Honesty & Just. at Star Valley Ranch*, 101 P.3d 123, 127 (Wyo. 2004).  A limited public figure cannot recover for defamatory statements unless "actual malice" is proven with respect to "those statements relating to the controversy that give rise to an individual's public figure status."  *Id.*  Actual malice requires that a statement was made "with knowledge that it was false or with reckless disregard of whether it was false or not."  *Davis*, 884 P.2d at 984.

Roice is a limited public figure concerning the matters she posted to her public Instagram account, namely, the events of January 6.  Unless someone who participates in a controversial matter "rejects any role in the debate, he too has 'invited comment' relating to the issue at hand."  *Martin*, 101 P.3d at 131.  Roice placed herself in the debate: she posted her January 6 image publicly, included a caption celebrating the anniversary of that event, and engaged with Baldwin about it.  (Compl. ¶¶ 18, 20, 22.)  Roice could have chosen not to inject herself into this debate or post her photograph.  She did the opposite.  (*Id.*; *see id.*, Ex. 1 at 5-6.)  She cannot now claim the shield afforded a private figure under the law.  (*See id.* ¶ 111.)  Plaintiffs also affirmatively made themselves limited public figures with respect to the political issues surrounding LCPL McCollum's tragic death, an event that is, unfortunately, inextricably intertwined with this action.[5]

Because they are limited public figures, Plaintiffs cannot maintain their causes of action

---

[5]  *See* Sean Sullivan, Dan Lamothe, Kareem Fahim & Haq Nawaz Khan, *Biden Meets with Families of Service Members Killed in Kabul as U.S. Races To Exit Afghanistan*, WASH. POST (Aug. 29, 2021), https://www.washingtonpost.com/politics/biden-meets-with-families-of-service-members-killed-in-kabul-as-us-races-to-exit-afghanistan/2021/08/29/c185ed78-08ca-11ec-aea1-42a8138f132a_story.html; Nikolas Lanum, *Sister of Wyoming Marine Killed in Kabul Says Biden's Apology Looked 'Fake and Scripted'*, FOX NEWS (Aug. 31, 2021), https://www.foxnews.com/media/marine-rylee-mccollum-family-biden-scripted-kabul.

for defamation unless they plead actual malice.  They haven't: Plaintiffs merely state that "even if [Roice] can be deemed to be a 'limited public figure' for the purposes of this lawsuit, Plaintiffs are informed and believe and allege that [Baldwin] acted with actual malice[.]"  (*Id.* ¶ 112.)  But this is exactly the type of "formulaic recitation of the elements of a cause of action" that will not survive a motion to dismiss.  *Iqbal*, 556 U.S. at 678.  Plaintiffs also claim Baldwin acted with actual malice "because he knew, or should have known, that [his actions] would result in an avalanche of violently negative attacks on Plaintiffs."  (Compl. ¶ 118.)  Plaintiffs misunderstand the law.  Their allegation does not assert that Baldwin believed his statements were false, which is the requirement for pleading actual malice.  *See Davis*, 884 P.2d at 984.  To the contrary, in the same paragraph, Plaintiffs eviscerate their legal claims by alleging Baldwin "believes" what he said—"that every person present at the Capitol demonstration on January 6, 2021, is an unrepentant rioter[.]"  (Compl. ¶ 118.)  Plaintiffs' own allegation undermines their claims as a matter of law.

*Third*, Baldwin's statements are not defamatory.  "A defamatory communication is one which tends to hold the plaintiff up to hatred, contempt, ridicule or scorn or which causes him to be shunned or avoided; one that tends to injure his reputation as to diminish the esteem, respect, goodwill or confidence in which he is held."  *Tschirgi*, 706 P.2d at 1119.  Though Plaintiffs "ask[] the Court to infer and imply a harmful statement, . . . the Court only looks to the words actually said."  *USI Ins. Servs.*, 2018 WL 9868577, at *7.  Baldwin's only references to Plaintiffs in his post of Roice's January 6 photograph are as follows: "I read in The Times, I believe, the story about the soldiers that died at the Kabul airport.  I did some research.  I found, on IG [Instagram], that this woman is the [sister] of one of the men who was killed.  I offered to send her sister-in-law some $ as a tribute to her late brother, his widow and their child.  Which I did.  As a tribute to a fallen soldier.  Then I find this.  Truth is stranger than fiction." (Compl. ¶ 27, Ex. 1 at 4.)

None of those words, individually or collectively, "hold [Plaintiffs] up to hatred, contempt, ridicule or scorn." *Tschirgi*, 706 P.2d at 1119. Instead, they are purely a recitation of facts. If any content contained within Baldwin's Instagram post meets that standard, it is the photograph itself. But the photograph is *Roice's* public statement—not Baldwin's. Roice admits that she was present at the Capitol on January 6, and she was clearly proud of her conduct when she posted her cheerful "Throwback" photograph to her own public Instagram account. (Compl. ¶¶ 18, 20, Ex. 1 at 2.) Plaintiffs cannot now allege that Baldwin's amplification of Roice's already-public image is defamatory, because "the damage to [Plaintiffs'] reputation, if damage there was, was complete" upon Roice's original posting of the image. *Tschirgi*, 706 P.2d at 1120.

Nor do Plaintiffs adequately allege that Baldwin's comments to Roice or other Instagram users containing the word "insurrectionist" are actionable. Baldwin's opinion is incidental to his reposting of Roice's photograph, a public fact that speaks for itself. In other words, the third-party posts that Plaintiffs claim to be offensive all criticized Plaintiffs because Roice *participated* in the January 6 events and then publicly celebrated that fact with a photograph. (*See, e.g.*, Compl. ¶¶ 33, 35, Ex. 1 at 9-14, 19-20.) If Roice had not participated in the January 6 events, the third-party criticism wouldn't have followed. Plaintiffs cannot assert a defamation claim in these circumstances, because to state a claim for defamation, "[t]he falsity of a statement and the defamatory 'sting' of the publication must coincide—that is, where the alleged defamatory 'sting' arises from substantially true facts, the plaintiff may not rely on minor or irrelevant inaccuracies to state a claim for libel." *Wyoming Corp. Servs. v. CNBC, LLC*, 32 F. Supp. 3d 1177, 1185 (D. Wyo. 2014). Here, the "sting" of the publication is from Roice's own photograph and celebration of January 6, facts that Plaintiffs admit, not Baldwin's related opinion.

The Court should dismiss the defamation claims for each of these independent reasons.

### 6.   Defamation by implication is not recognized under Wyoming law

Plaintiffs also fail to state claims for "defamation by implication" because this tort is not recognized under Wyoming law.   As the Supreme Court of Wyoming recently explained, Wyoming law recognizes only "two general classes of defamation: defamation with special damages and defamation per se." *Hill*, 420 P.3d at 741.[6]

### B.   Plaintiffs Fail to State Claims for False Light Invasion of Privacy and Intrusion Upon Seclusion

### 1.   False light invasion of privacy should not be recognized under Wyoming law and, regardless, Plaintiffs have not properly alleged it

Plaintiffs fail to state claims for false light invasion of privacy because this tort should not be recognized under Wyoming law.   The Wyoming Supreme Court recently considered "[w]hether Wyoming recognizes false light invasion of privacy, as stated in the Restatement (Second) of Torts § 652E." *Bextel*, 474 P.3d at 627.   The Court declined to rule because the appellants failed to state such a claim. *Id.* at 634.   In doing so, however, the Court stated that false light invasion of privacy is a "controversial tort": "Because it substantially overlaps with defamation, is difficult to quantify, and could have a chilling effect on speech, 'courts and legal scholars heartily debate whether false

---

[6] Nor do Plaintiffs adequately allege this tort, even in jurisdictions where it does exist.   "A defamation by implication stems not from what is literally stated, but from what is implied." *Wyoming Corp. Servs.*, 32 F. Supp. 3d at 1189 (quoting *White v. Fraternal Order of Police*, 909 F.2d 512, 518 (D.C. Cir. 1990)).   But Baldwin did not imply anything.   Plaintiffs admit Roice attended the January 6 events.   (Compl. ¶¶ 18-20.)   And Plaintiffs allege Baldwin used the word "insurrectionist" to describe Roice as an "insurrectionist." (*Id.* ¶¶ 32-34.)   A statement cannot imply the same thing it states explicitly.   Yet that is what Plaintiffs illogically and circularly allege. (*See id.* ¶¶ 51, 82, 113.)   Moreover, the Complaint states no basis for Plaintiffs' conclusory allegations that Baldwin implied they were "terrorists" or "white supremacists." (*Id.* ¶¶ 51, 82.) *See Wyoming Corp. Servs.*, 32 F. Supp. 3d at 1189 (to constitute defamation by implication, the author's language "must also affirmatively suggest that the author intends or endorses the inference"); *Hall*, 935 F.2d at 1110 (court need not accept "conclusory allegations without supporting factual averments"); *Est. of Ronquillo*, 720 F. App'x at 437 (on motion to dismiss, court need not accept allegations "directly contra[di]cted by the attached exhibits").

light invasion of privacy deserves a place among the recognized torts.'" *Id.* at 632 & n.6 (quoting *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 898 (Colo. 2002) (en banc)).  This Court should heed the Wyoming Supreme Court's caution and decline to recognize this cause of action.

Regardless, Plaintiffs fail to state such a claim.  Where recognized, false light invasion of privacy is actionable "if (a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id.* at 632. "The matter must constitute such a major misrepresentation of the plaintiff's character, history, activities or beliefs that serious offense may reasonably be expected to be taken by a reasonable person in the plaintiff's position." *Id.* 632-33.

Plaintiffs have not satisfied this heavy burden.  Plaintiffs do not adequately allege that Baldwin placed them in a false light that constitutes "a major misrepresentation of [their] character, history, [or] activities[.]"  *Id.*  Instead, Plaintiffs concede that Roice publicly promoted her participation in the events of January 6.  (Compl. ¶¶ 18-20.)  Plaintiffs cannot claim Baldwin's recirculation of facts and his opinion about Roice constitute "a major misrepresentation of [her] character" simply because those facts and opinion were revealed to a less sympathetic audience.

## 2.     Plaintiffs do not state claims for intrusion upon seclusion

Intrusion upon seclusion covers conduct that "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Howard v. Aspen Way Enters., Inc.*, 406 P.3d 1271, 1274 (Wyo. 2017).  A defendant intrudes upon another's seclusion "only when he has intruded into a private place, or has otherwise invaded a private seclusion that the plaintiff has thrown about his person or affairs." *Id.*  But "there is no liability for the examination of a public

record concerning the plaintiff," or when the plaintiff's "appearance is public and open to the public eye." *Id.*

Plaintiffs do not allege that Baldwin revealed private information.  On the contrary, Plaintiffs concede that Baldwin commented on "a public record concerning the plaintiff" that was "public and open to the public eye," *id.*, and that Roice herself created this public record by posting it on Instagram.  (*See* Compl. ¶¶ 18-20, 35, Ex. 1 at 2.)  Baldwin did not intrude upon any issue "not exhibited to the public gaze." *Howard*, 406 P.3d at 1274.  Thus, this claim must be dismissed.

### C.      Plaintiffs Fail to State Claims for Negligence and Gross Negligence

Plaintiffs' claims for negligence and gross negligence are deficient.  Baldwin did not owe Plaintiffs a duty, there is no proximate causation, and gross negligence is not a separate claim under Wyoming law.

 "Absent a duty, there is no actionable claim of negligence." *Rice v. Collins Commc'n, Inc.*, 236 P.3d 1009, 1014 (Wyo. 2010).  "A duty may arise based upon the existence of a contract, a statute, or the common law, or when the relationship of the parties is such that the law imposes an obligation on the defendant to act reasonably for the protection of the plaintiff." *Lucero v. Holbrook*, 288 P.3d 1228, 1232 (Wyo. 2012).  Plaintiffs do not allege they had a contractual relationship with Baldwin or that any common law or statute imposed a duty upon Baldwin.  Nor could they.  Absent certain special relationships that are inapplicable here as a matter of law, "there is no duty to control the conduct of a third person so as to prevent him from causing . . . harm to another." *Sanchez v. United States*, 506 F.2d 702, 705 (10th Cir. 1974); *Fredericks v. Jonsson*, 609 F.3d 1096, 1102 (10th Cir. 2010).  Baldwin stated his opinion.  Plaintiffs' allegation that third parties reacted to Baldwin's statements in an offensive manner does not create a duty.  Ruling otherwise would allow Plaintiffs to circumvent the First Amendment by transforming a meritless defamation claim into any number of other torts.  The law does not permit such a maneuver, and

*all* of Plaintiffs' alleged tort claims suffer from this defect. *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (the First Amendment "serve[s] as a defense in state tort suits"); *Samuel v. Oromia Media Network*, 2021 WL 5054480, at *3 (D. Minn. Nov. 1, 2021) ("Aside from a few narrow categorical exceptions, the First Amendment shields speech from tort liability.").

Plaintiffs' negligence claim also fails because they do not plead proximate causation. Proximate causation is "conduct which is a substantial factor in bringing about the injuries identified in the complaint." *Lucero*, 288 P.3d at 1235. Plaintiffs do not allege that Baldwin was a "substantial factor" in bringing about their alleged harm. Although Plaintiffs allege Baldwin "invited 2.4 million people to attack, threaten, and shame the McCollum family" (Compl. ¶¶ 71, 102, 134), this claim belies the actual words Baldwin used, which must control the Court's analysis: he never asked any person, explicitly or implicitly, to take any action. (*Id.*, Ex. 1 at 4.) In fact, he told the commenters to *stop* making offensive comments. (*Id.* ¶ 27, Ex. 1 at 5-6, 9.) All Plaintiffs allege, if anything, is that Baldwin "created only a condition or occasion for the harm to occur" at the hands of third parties, but this is "regarded as a remote, not a proximate, cause" and cannot meet the test for negligence. *Lucero*, 288 P.3d at 1235.

Nor can Plaintiffs solve these defects by asserting a claim for gross negligence, because "'[g]ross [n]egligence' is not a separate cause of action from ordinary negligence[.]" *Vance v. Wyomed Lab'y, Inc.*, 375 P.3d 746, 749 (Wyo. 2016). Further, Plaintiffs' only allegation regarding gross negligence is that Baldwin's "conduct is extreme when compared to ordinary negligence standards." (Compl. ¶¶ 66, 97, 129.) But this conclusory recitation of the definition of gross negligence does not suffice to plead it. *See Iqbal*, 556 U.S. at 678.

### D.     Plaintiffs Fail to State Claims for Intentional Infliction of Emotional Distress

Under Wyoming law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional

distress, and if bodily harm to the other results from it, for such bodily harm." *Worley v. Wyoming Bottling Co.*, 1 P.3d 615, 627-28 (Wyo. 2000).  Plaintiffs fail to state such a claim.

Plaintiffs do not allege that Baldwin acted in an extreme and outrageous manner.  Wyoming law defines "extreme and outrageous conduct" as "conduct which goes beyond all possible bounds of decency, is regarded as atrocious, and is utterly intolerable in a civilized community." *Hoblyn*, 55 P.3d at 1231-32.  It is not enough, for example, for Plaintiffs to allege in conclusory terms that Baldwin "acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort." *Worley*, 1 P.3d at 628; *see Hall*, 935 F.2d at 1110.  "[L]iability [also] clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Worley*, 1 P.3d at 628. Plaintiffs do not meet this onerous standard.  Baldwin stated his opinion that the participants in the January 6 event were insurrectionists.  In other posts, he expressed sympathy for Plaintiffs' loss and requested that third parties *not* post offensive comments.  (*See* Compl., Ex. 1 at 5-6, 9.) However offended Plaintiffs may have been by hearing Baldwin's opinion, their offense at protected speech does not state a claim. *See Worley*, 1 P.3d at 628 ("There is no occasion for the law to intervene in every case where someone's feelings are hurt.  There must still be freedom to express an unflattering opinion . . . ."); *Snyder*, 562 U.S. at 461 (holding that claim for intentional infliction based on defendant's picketing of service member's funeral was barred by the First Amendment, because "[a]s a Nation we have chosen . . . to protect even hurtful speech on public issues to ensure that we do not stifle public debate").

Plaintiffs also fail to allege "severe emotional distress" within the meaning of Wyoming law.  Severe emotional distress is "distress which is so severe that no reasonable man could be

expected to endure it." *Hoblyn*, 55 P.3d at 1232. The severity must rise above "experienc[ing] uncomfortable and unpleasant feelings[.]" *Id.* Plaintiffs claim they suffer various symptoms and emotions (Compl. ¶ 40; *see also id.* ¶¶ 70, 101, 133), but the law requires that they allege "evidence of the *impact* of this alleged distress on their lives," such as, for example, "missed work," inability to "engage in hobbies and activities previously enjoyed, diminished ability to socialize or handle the necessary functions of everyday life, or memory loss." *Hoblyn*, 55 P.3d at 1232 (emphasis added). Plaintiffs' assertion that they "experienced offensive feelings and emotions without further evidence of the effect on their lives," *id.*, fails to state a claim.

### E.    Plaintiffs' Complaint Should Be Dismissed With Prejudice

"A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). That is the case here. Plaintiffs have failed to state a claim as a matter of law, and it would be futile to permit amendment because every conceivable basis for Plaintiffs' claims is already incorporated into the Complaint through the immutable Instagram feed attached to the Complaint.

CONCLUSION

The Court should grant Baldwin's motion to dismiss, with prejudice.

Dated:  April 4, 2022                          Respectfully submitted,

                                               QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                               BY:    */s/ Luke Nikas*
                                                      Luke Nikas
                                                      51 Madison Avenue, 22nd Floor
                                                      New York, NY 10010
                                                      (212) 849-7000
                                                      lukenikas@quinnemanuel.com

                                               LONG REIMER WINEGAR, LLP
                                               Randall B. Reed, Wyo. Bar No. 5-2863

25

Aaron J. Lyttle, Wyo. Bar No. 7-4726
Kaylee A. Harmon, Wyo. Bar No. 7-6308
2120 Carey Avenue, Suite 300
Cheyenne, WY 82001
(307) 635-0710
rreed@lrw-law.com
alyttle@lrw-law.com
kharmon@lrw-law.com

*Attorneys for Defendant Alec Baldwin*

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the foregoing Memorandum of Law in Support of Defendant Alexander R. Baldwin III's Notice of Motion to Dismiss Plaintiffs' Complaint with the Clerk of the Court using the CM/ECF system, which will automatically send email notification of such filing on the 4th day of April, 2022, to the following individuals:

Dennis C. Postiglione (admitted *pro hac vice*)
THE CASAS LAW FIRM, P.C.
3801 North Capital of Texas Highway
Suite E240, #445
Austin, TX 78746
(512) 806-7699
(855) 220-9626 (fax)
dennis@talentrights.law

Joseph N. Casas (admitted *pro hac vice*)
THE CASAS LAW FIRM, P.C.
402 West Broadway
Suite 400
San Diego, CA 92101
(855) 267-4457
(855) 220-9626 (fax)
joseph@talentrights.law

Frank R. Chapman
CHAPMAN, VALDEZ & LANSING
125 West Second Street
Casper, WY 82602
(307) 237-1983
(307) 577-1871 (fax)
frc@bslo.com

*Attorneys for Plaintiffs Jiennah McCollum,*
*Roice Joleen McCollum, and Cheyenne McCollum*


  /s/ Luke Nikas
Luke Nikas