

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| JIENNAH McCOLLUM, ROICE JOLEEN McCOLLUM, AND CHEYENNE McCOLLUM, <br><br> Plaintiffs, <br><br> vs. <br><br> ALEC BALDWIN, <br><br> Defendant. | Case No. 22-CV-008-NDF |

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This case arises from opinions expressed by Defendant Baldwin through social media posts and private messages concerning Plaintiff Roice McCollum's attendance at the Washington, D.C. events on January 6, 2021. CM/ECF Document (Doc.) 1. Plaintiffs ("the McCollums") allege Mr. Baldwin's opinions resulted in hateful messages and threats by third parties toward them, and they bring this action alleging various causes of action. Baldwin argues for dismissal on a number of grounds, including lack of personal jurisdiction. Doc. 18.  The motion has been fully briefed. Doc. 19, 20.  The Court finds and concludes that the McCollums have failed to meet their burden of proof in showing that this Court may properly exercise personal jurisdiction over Mr. Baldwin.  Therefore, the Court **GRANTS** Defendant Baldwin's motion to dismiss for lack of personal jurisdiction.

Background

Because the Court's decision is limited to personal jurisdiction, there is no need to address the multitude of allegations, claims and arguments from the complaint or the briefing. Suffice it to say that it is undisputed that Mr. Baldwin was born and raised in New York, and resides in New York currently (as he has for decades). Doc. 1, ¶ 6; 18-1, ¶ 2. He has never lived in Wyoming, or transacted any regular business or performed any regular work or service in Wyoming; never derived substantial revenue from goods or services in Wyoming; never filed income taxes in Wyoming (which has no income tax); never subscribed to a telephone in Wyoming; never held any license issued by Wyoming; and never held a bank account or other material assets in Wyoming. *Id*. at ¶ 3. Mr. Baldwin was in New York when the events alleged in the complaint occurred. *Id*. at ¶ 4.

Focusing just on the allegations from the complaint which go toward the personal jurisdiction analysis, on January 3, 2022, Roice McCollum (who resides in Wyoming) posted on her Instagram feed a photograph of people surrounding the Washington Monument at the "Make America Great Again" protest in Washington, D.C. Doc. 1, ¶ 20. Roice McCollum had attended the Washington D.C. protest. *Id*. at ¶ 18. Mr. Baldwin (from New York) commented on Roice's post by saying, "Are you the same woman that I sent the $ to for your sister's husband who was killed during the Afghanistan exit."[1] Doc. 1-1, p. 2. The private Instagram messages between Mr. Baldwin and Roice McCollum on January 3, 2022 are as follows:

---

[1] Jiennah McCollum's husband Rylee died in Afghanistan while on active duty as a marine. A GoFundMe account was started on behalf of Jiennah and her soon-to-be-born daughter. Doc. 1, ¶¶ 15, 20. Jiennah resides in California. *Id*. at ¶ 8.

>**Baldwin**: When I sent you the $ for your late brother, out of real respect for his service to our country, I didn't know you were a January 6th rioter
>
>**Roice**: Protesting is perfectly legal in the country and I've already had my sit down with the fbi. Thanks, have a nice day!
>
>**Baldwin**: I don't think so.
>
>Your brother fought for this country bravely and honestly
>
>Your activities resulted in the unlawful destruction of government property, the death of a law enforcement officer, an assault on the certification of the presidential election.
>
>I reposted your photo
>
>Good luck

*Id*. at p. 3. Mr. Baldwin posted on his own Instagram feed his views on "the attack on the Capitol" and talked about the money he sent to Roice McCollum as "a tribute to her late brother, his widow and their child." Doc. 1-1, p. 4. His post continued with, "Then I find this. Truth is stranger than fiction." *Id*. Following this comment, Mr. Baldwin apparently re-posted the photograph originally posted by Roice McCollum on her Instagram feed.

When Roice McCollum asked Mr. Baldwin about his public post, he responded saying, "There are hateful things posted toward you that are wrong. Irony was my point. The irony of sincerely wanting to honor your brother and the fact that you are an insurrectionist. Irony: 'the use of words that mean the opposite of what you really think especially in order to be funny' (Merriam Webster)." Doc. 1-1, p. 5. Roice McCollum then apparently copied some very hateful posts she received, and said to Mr. Baldwin, "Thanks for the follow Alec." *Id*. at p. 6. Again, Mr. Baldwin responded by saying, "I

3

find that abhorrent.  My feelings were expressed by my gesture on behalf of your brother."  *Id*.

## Applicable Law

Plaintiffs bear the burden of establishing personal jurisdiction and need only make a *prima facie* showing of personal jurisdiction to defeat a motion to dismiss decided without an evidentiary hearing.  *Warad West, LLC v. Sorin CRM USA Inc.*, 119 F. Supp. 3d 1294, 1297 (D. Colo. 2015) (citations omitted).  "A *prima facie* showing is made where the plaintiff has demonstrated facts that, if true, would support jurisdiction over the defendant."  *Id*. (citations omitted).  Additionally, any factual conflicts shall be viewed in plaintiffs' favor, and all well-pleaded allegations in the complaint will be accepted as true.  *Id*. (citations omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show both that jurisdiction is proper under the laws of the forum state and that the exercise of jurisdiction would not offend due process."  *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000).  The Tenth Circuit has employed a two part test when determining personal jurisdiction: first, does "any applicable statute authorize[] the service of process on defendants."  *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008).  Second, "we examine whether the exercise of statutory jurisdiction comports with constitutional due process demands."  *Id*.

"Wyoming's long-arm statute provides that '[a] Wyoming court may exercise jurisdiction on any basis not inconsistent with the Wyoming or United States constitution.'"  *Medina v. Four Winds Int'l Corp.*, 111 F. Supp. 2d 1164, 1166 (D. Wyo. 2000) (citing

4

Wyo. Stat. § 5–1–107(a) (1999)). Therefore, "in Wyoming, 'this two part inquiry collapses into a single due process analysis.'" *Id*. (citing *Rambo v. Am. S. Ins. Co.,* 839 F.2d 1415, 1416 (10th Cir. 1988) (applying Oklahoma's similar long-arm statute); *Dobbs v. Chevron U.S.A., Inc.,* 39 F.3d 1064, 1067–68 (10th Cir. 1994) (recognizing that the limits of Wyoming's long arm statute are coextensive with federal due process requirements)).

Discussion

The McCollums advance no argument in support of general personal jurisdiction over Mr. Baldwin, and Mr. Baldwin's brief and affidavit are persuasive and support the conclusion that the Court does not have general personal jurisdiction over Mr. Baldwin. Doc. 18, p. 15; 18-1; 19, p. 10. Therefore, the only basis for personal jurisdiction is specific personal jurisdiction. "Specific jurisdiction exists where a defendant does not have continuous contacts with the forum state, but the plaintiff shows that 1) the defendant has purposefully directed its activities at residents of the forum state and 2) the plaintiff's alleged injuries 'arise out of or relate to' those activities." *Harris v. Am. Int'l Grp., Inc.,* 923 F. Supp. 2d 1299, 1304 (W.D. Okla. 2013) (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476 (1985)). The Tenth Circuit has distilled these principles into a three-part test: whether the defendant took "(1) an intentional action; (2) expressly aimed at the forum state; and (3) with knowledge that the brunt of the injury would be felt in the forum state." *Dental Dynamics, LLC v. Jolly Dental Grp., LLC*, 946 F.3d 1223, 1231 (10th Cir. 2020).

The only factual allegations relating to Mr. Baldwin's intentional actions are the few private Instagram messages he sent to Roice McCollum, and the post on his own

Instagram feed (which re-posted her public Instagram post/photo).  Mr. Baldwin's public post on his own Instagram feed cannot reasonably be considered expressly aimed at Wyoming given Mr. Baldwin's "**2.4 million** Instagram followers." Doc. 1, ¶ 27.  Further, the allegations that Mr. Baldwin was aware that his followers are sympathetic to his political affiliation (*Id*. at ¶ 30), that they are more likely to be politically active and opinionated (*Id*. at ¶ 31), that he fueled the firestorm of hatred from his followers (*Id*. at ¶ 32), and did nothing to remedy what he had started (*Id*. at ¶ 36), also are not intentional actions by Mr. Baldwin that were expressly aimed at Wyoming.

In short, the well-established principles of personal jurisdiction are determinative in this case.  A few Internet communications from Mr. Baldwin in New York to Roice McCollum in Wyoming are insufficient to establish that he expressly aimed any allegedly tortious conduct at Wyoming.  *See, e.g., Rockwood Select Asset Fund XI (6)-1, LLC v. Devine Millimet & Branch*, 750 F.3d 1178, 1180 (10th Cir. 2014).  Or as the Supreme Court stated more succinctly, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Walden v. Fiore,* 571 U.S. 277, 291 (2014).  The entirety of Mr. Baldwin's relevant conduct occurred in New York through the use of Instagram, an Internet-based social networking service used to "upload photos or videos and share them with their followers or with a select group of friends.  They can also view, comment and like posts shared by their friends on Instagram." https://help.instagram.com/424737657584573 (accessed May 1, 2022).

Further, the fact that Mr. Baldwin placed content on his own Instagram feed from New York – that his 2.4 million followers could access world-wide – also does not subject

6

Mr. Baldwin to jurisdiction in Wyoming. *See XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 844 (10th Cir. 2020) ("then the defense of personal jurisdiction, in the sense that a State has geographically limited judicial power, would no longer exist," quoting *Shrader v. Biddinger*, 633 F.3d 1235, 1240 (10th Cir. 2011)).

Following the instructions given by the Tenth Circuit, this Court must examine whether the defendant "deliberately directed [his] message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state.'" *XMission*, 955 F.3d at 845 (quoting *Shrader*, 633 F.3d at 1241). That did not occur here, and neither Mr. Baldwin's wealth, fame or number of followers changes the analysis. Also, the McCollum's argument that "Baldwin cannot simply pick a fight in Wyoming and scurry back to his Manhattan penthouse claiming he is immune from the consequences of his action in Wyoming" is entirely unpersuasive. Mr. Baldwin was never in Wyoming to "pick a fight" and did not "scurry back" as he never left New York. Mr. Baldwin is not "immune" from the consequences of any tort simply because of this Court's determination that it lacks personal jurisdiction. However, the allegedly tortious conduct by Mr. Baldwin in New York, by way of posting a photo and content on his own Instagram feed, was not deliberately directed at an audience in Wyoming, thus any allegation that it was intended to harm plaintiffs primarily or particularly in Wyoming is insufficient for personal jurisdiction.

For the above-stated reasons, Defendant Baldwin's motion to dismiss for lack of personal jurisdiction is GRANTED.  This case is DISMISSED without prejudice, and the Clerk of Court shall close the case.

Dated this 4th day of May, 2022.

*Nancy D. Freudenthal*
_____
NANCY D. FREUDENTHAL
UNITED STATES DISTRICT JUDGE